UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>GLOBAL COMMUNITY INNOVATIONS LLC, a limited liability company, *et al.*,<br><br>    Defendants. | **Case No. 5:19-cv-00788**<br><br>**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**<br><br>**AGAINST**<br><br>**GLOBAL COMMUNITY INNOVATIONS LLC; INNOVATED HEALTH LLC; EMERGING NUTRITION INC.; BUDDHA MY BREAD LLC; INNOVATED FULFILLMENT LLC; SHIP SMART LLC; VISTA MEDIA LLC; ASH ABBAS LLC; DCT MARKETING, INC.; RNA ENTERPRISE, INC; FRED RICHARD GUERRA, III; LANTY PAUL GRAY, JR.; AND RAFAT ABBAS** |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") for a permanent injunction and other equitable relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b).

The Commission and Defendants Global Community Innovations LLC; Innovated Health LLC, also d/b/a Innovative Health; Emerging Nutrition Inc.; Buddha My Bread LLC; Innovated Fulfillment LLC; Ship Smart LLC, also d/b/a Jetpack or Jetpack Fulfillment; Vista Media LLC; Ash Abbas LLC; DCT Marketing, Inc.; RNA Enterprise, Inc.; Fred Richard Guerra, III; Lanty Paul Gray, Jr., a/k/a Lanty Paul; and Rafat Abbas, a/k/a Rafot Abbas (hereafter collectively, "Defendants") stipulate to the entry of this Stipulated Final Judgment and Order for

Permanent Injunction and Other Equitable Relief to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendants participated in deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in connection with the marketing and sale of products purported to enhance cognitive performance.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Defendants admit the facts necessary to establish jurisdiction only for purposes of this action.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order. The parties agree to bear their own costs and attorney fees.

5.     Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.     "**Affiliate**" means any Person, including but not limited to any third-party marketer, who participates in an Affiliate Program.

2.     "**Affiliate Network**" means any Person who provides another Person with Affiliates for an Affiliate Program or with whom any Person contracts as an Affiliate to promote any product, service, or program.

2

3. "**Affiliate Program**" means any arrangement under which any Defendant pays, or offers to pay, or provides, or offers to provide, any form of consideration to any third party, either directly or through an Affiliate Network (a) to provide any Defendant with, or refer to any Defendant, potential or actual customers; or (b) otherwise to market, advertise, or offer for sale any product, service, or program on behalf of any Defendant.

4. "**Charge**" or "**Charged**" means any attempt to collect money or other consideration from a consumer, including but not limited to causing billing information to be submitted for payment, including but not limited to against the consumer's credit card, debit card, bank account, telephone bill, or other account.

5. "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

A. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

B. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood;

C. An audible disclosure, including but not limited to by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

D.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

E.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

F.      The disclosure must comply with these requirements in each medium through which it is received, including but not limited to all electronic devices and face-to-face communications;

G.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

H.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

6.      "**Close Proximity**" means that the disclosure is very near the triggering representation.  For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in Close Proximity to the triggering representation.

7.      "**Corporate Defendants**" means Global Community Innovations LLC; Innovated Health LLC, also d/b/a Innovative Health; Emerging Nutrition Inc.; Buddha My Bread LLC; Innovated Fulfillment LLC; Ship Smart LLC, also d/b/a Jetpack or Jetpack Fulfillment; Vista Media LLC; Ash Abbas LLC; DCT Marketing, Inc.; RNA Enterprise, Inc.; and their successors and assigns.

8.      "**Covered Product**" means any Dietary Supplement, Food, or Drug, including but not limited to Xcel, EVO, Geniux, and Ion-Z.

4

9.     "**Defendants**" means the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

10.     "**Dietary Supplement**" means:  (1) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional Food or as a sole item of a meal or the diet.

11.     "**Drug**" means:  (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than Food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

12.     "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount

5

and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

13.    "**Food**" means:  (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

14.    "**Individual Defendants**" means Fred Richard Guerra, III; Lanty Paul Gray, Jr., a/k/a Lanty Paul; and Rafat Abbas, a/k/a Rafot Abbas.

15.    "**Person**" means a natural person, an organization, or other legal entity, including but not limited to a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

## I.

## PROHIBITED REPRESENTATIONS:  COGNITIVE PERFORMANCE AND DISEASE CLAIMS

**IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including but not limited to through the use of a product name, endorsement, depiction, or illustration, any representation that such Covered Product:

A.    Improves short or long term memory or increases focus or concentration in users;

B.    Prevents memory loss;

C.    Increases brain power;

D.    Increases users' IQ;

E.    Improves users' speed of information processing; or

6

F.      Treats, cures, or mitigates any disease,

unless the representation is non-misleading and, at the time of making such representation, they

possess and rely upon competent and reliable scientific evidence substantiating that the

representation is true.  For purposes of this Section, competent and reliable scientific evidence

shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent

Product, that is sufficient in quality and quantity based on standards generally accepted by

experts in the relevant disease, condition, or function to which the representation relates, when

considered in light of the entire body of relevant and reliable scientific evidence, to substantiate

that the representation is true.  Such testing must be: (1) randomized, double-blind, and placebo-

controlled; and (2) conducted by researchers qualified by training and experience to conduct

such testing.  In addition, all underlying or supporting data and documents generally accepted by

experts in the field as relevant to an assessment of such testing as described in the Section

entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or

Studies must be available for inspection and production to the Commission.  Persons covered by

this Section have the burden of proving that a product satisfies the definition of Essentially

Equivalent Product.

## II.

## PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees,

and attorneys, and all other Persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with the

manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

Covered Product, are permanently restrained and enjoined from making, or assisting others in

7

making, expressly or by implication, including but not limited to through the use of a product name, endorsement, depiction, or illustration, any representation about the health benefits, performance, or efficacy of any Covered Product, other than representations covered under the Section of this Order entitled Prohibited Representations:  Cognitive Performance and Disease Claims, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

8

## III.

### PROHIBITED REPRESENTATIONS REGARDING TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including but not limited to through the use of any product name, endorsement, depiction, or illustration:

    A.    That any Covered Product is clinically proven to:

        1.  Increase focus;

        2.  Improve concentration;

        3.  Increase brain power;

        4.  Enhance memory recall; or

        5.  Increase users' IQ;

    B.    That the performance or benefits of any Covered Product are scientifically or clinically proven or otherwise established; or

    C.    The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

## IV.

### FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendants, Defendants' officers, agents, employees, and attorneys, or all other Persons in active concert or

9

participation with any of them from:

A.     For any Drug, making a representation that is approved in labeling for such Drug under any tentative final or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

B.     For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

**V.**

**PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES**

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including but not limited to:

A.     All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other Person not employed by the research entity;

B.     All documents referring or relating to recruitment; randomization; instructions, including but not limited to oral instructions, to participants; and participant compliance;

C.     Documents sufficient to identify all test participants, including but not limited to any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including but not limited to any participants who did not complete the test; source documents for such data; any

data dictionaries; and any case report forms;

D.      All documents referring or relating to any statistical analysis of any test data, including but not limited to any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.      All documents referring or relating to the sponsorship of the test, including but not limited to all communications and contracts between any sponsor and the test's researchers.

*Provided, however,* the preceding preservation requirement does not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by:  (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other Person or entity in active concert or participation with any Defendant; (4) any Person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Corporate Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

11

## VI.

### PROHIBITED REPRESENTATIONS
### RELATED TO ENDORSEMENTS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including but not limited to through the use of any good or service name, endorsement, depiction, or illustration, that:

A.      Any Person is an objective news reporter with respect to the endorsement message provided by that Person;

B.      Purported consumers or celebrities who appear in advertising obtained a reported result through use of those goods or services; and

C.      Persons depicted in advertisements, including but not limited to experts, consumers, and celebrities, are providing their objective, independent opinions regarding the efficacy of any good or service.

## VII.

### OTHER PROHIBITED MISREPRESENTATIONS AND BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from:

12

A. Misrepresenting, or assisting others in misrepresenting, expressly or by implication:

1. That any website advertising, marketing, promoting, offering for sale, or selling the good or service is an objective news report;

2. That objective news reporters have performed independent tests demonstrating the effectiveness of the good or service;

3. That any legitimate news source has featured the good or service or its claimed effects;

4. That consumers can use or try a good or service on a risk-free trial basis;

5. The total cost to purchase, receive, or use the good or service, including but not limited to shipping, handling, processing, and any additional financial obligations that may be incurred as a result of accepting the free product, service, or offer;

6. The timing or manner of any Charge or bill;

7. Any material restrictions, limitations, or conditions to purchase, receive, or use the good or service;

8. Any material aspect of the performance, efficacy, nature, or central characteristics of the good or service; and

9. Any material aspect of the nature or terms of a refund, return, cancellation, exchange, guarantee, or repurchase policy for the good or service, including but not limited to the deadline (by date or frequency) by which the consumer must act.

B. Failing, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, service, or program through an Affiliate Program to:

13

1.      Require each Affiliate and/or Affiliate Network to provide to Defendants the following identifying information:

a.      In the case of a natural Person, the Affiliate's or Affiliate Network's first and last name, physical address, country, telephone number, email address, and complete bank account information as to where payments are to be made to that Person;

b.      In the case of a business entity, the Affiliate's or Affiliate Network's name and any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email address for at least one natural Person who owns, manages, or controls the Affiliate or Affiliate Network, and the complete bank account information as to where payments are to be made to the Affiliate or Affiliate Network;

c.      If Defendants only have access to certain Affiliates through an Affiliate Network, then Defendants shall contractually require each Affiliate Network to obtain and maintain from those Affiliates the identifying information set forth in Subsections B.1.a and B.1.b. of this Section prior to the Affiliate's or Affiliate Network's participation in the Defendants' Affiliate Program.

2.      As a condition of doing business with any Affiliate or Affiliate Network or such Affiliate or Affiliate Network's acceptance into Defendants' Affiliate Program:  (a) provide each such Affiliate or Affiliate Network a copy of this Order; (b) obtain from each such Affiliate or Affiliate Network a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order; and (c) Clearly and Conspicuously disclose in writing that engaging in acts or practices prohibited by this Order will result in immediate termination of any Affiliate or Affiliate Network and forfeiture of all monies owed to such

Affiliate or Affiliate Network; *provided, however*, that if Defendants only have access to certain Affiliates through an Affiliate Network, then Defendants shall contractually require that the Affiliate Network provide the information required by this Subsection to each of those Affiliates and retain proof of the same prior to any such Affiliate being used in Defendants' Affiliate Program; and if Defendants should acquire any entity that has an existing program of selling through Affiliates, the entity must complete all steps in this Subsection prior to Defendants' acquisition of the entity.

3.      Require that each Affiliate or Affiliate Network, prior to the public use or dissemination of any marketing materials, including but not limited to websites, emails, and pop-ups used by any Affiliate or Affiliate Network to advertise, promote, market, offer for sale, or sell any products, services, or programs through Defendants' Affiliate Program, provide Defendants with the following information:  (a) copies of all materially different marketing materials to be used by the Affiliate or Affiliate Network, including but not limited to text, graphics, video, audio, and photographs; (b) each location the Affiliate or Affiliate Network maintains, or directly or indirectly controls, where the marketing materials will appear, including but not limited to the URL of any website; (c) for hyperlinks contained within the marketing materials, each location to which a consumer will be transferred by clicking on the hyperlink, including but not limited to the URL of any website; and (d) the range of dates that the marketing materials will be publicly used or disseminated to consumers; *provided, however*, that if Defendants only have access to certain Affiliates through an Affiliate Network, then Defendants shall contractually require that the Affiliate Network obtain and maintain the same information set forth above from each of those Affiliates who are part of Defendants' Affiliate Program prior

to the public use or dissemination of such marketing materials, and provide proof to Defendants of having obtained the same.

4.  Promptly review the marketing materials specified in Section VII.B.3 above as necessary to ensure compliance with this Order. Defendants shall also promptly take steps as necessary to ensure that the marketing materials provided to Defendants under Section VII.B.3 above are the marketing materials publicly used or disseminated to consumers by the Affiliate or Affiliate Network. If Defendants determine that the use of any marketing material does not comply with this Order, Defendants shall inform the Affiliate or Affiliate Network in writing that approval is denied and shall not pay any amounts to the Affiliate or Affiliate Network for such marketing, including but not limited to any payments for leads, "click-throughs," or sales resulting therefrom; *provided, however*, that if Defendants only have access to certain Affiliates through an Affiliate Network, then Defendants shall contractually require that the Affiliate Network comply with the procedures set forth in this Subsection as to those Affiliates.

5.  Promptly and completely investigate any complaints that Defendants receive through any source to determine whether any Affiliate or Affiliate Network is engaging in acts or practices prohibited by this Order, either directly or through any Affiliate that is part of Defendants' Affiliate Program.

6.  Upon determining that any Affiliate or Affiliate Network has engaged in, or is engaging in, acts or practices prohibited by this Order, either directly or through any Affiliate that is part of Defendants' Affiliate Program, immediately:

          a.      Disable any connection between the Defendants' Affiliate Program and the marketing materials used by the Affiliate or Affiliate Network to engage in such acts or practices prohibited by this Order;

          b.      Immediately halt the processing of any payments or Charges generated by the Affiliate or Affiliate Network;

          c.      Fully refund, or cause to be refunded, within five (5) business days, each consumer Charged by Defendants whose sale originated from the Affiliate or Affiliate Network on or after the date the Affiliate or Affiliate Network engaged in acts or practices prohibited by this Order; and

          d.      Immediately terminate the Affiliate or Affiliate Network; *provided, however*, Defendants shall not be in violation of this Subsection if Defendants fail to terminate an Affiliate Network in a case where Defendants' only access to an Affiliate who has engaged in acts or practices prohibited by this Order is through an Affiliate Network and Defendants receive notice that the Affiliate Network immediately terminated the Affiliate violating this Order from any Affiliate Program maintained by the Defendants.

## VIII.

## REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from failing to Clearly and Conspicuously disclose, or assisting others in failing to Clearly and Conspicuously disclose, before consumers

are asked to reveal billing information such as account number or to consent to any purchase in connection with any claim that a good or service is offered on a "guaranteed," "free," "risk-free," "trial," "no obligation," or "reduced price" basis, or words of similar import, the following material terms and conditions of any offer:

      A.      In Close Proximity to such claim, the total cost to purchase, or receive, or use any good or service that is the subject of the sales offer, including but not limited to shipping, handling, and processing;

      B.      The amount, timing, and manner of payment of all fees, Charges, or other amounts that a consumer will be Charged or billed, and any additional financial obligations that may be incurred as a result of accepting the free product, service, or offer; and

      C.      The terms and conditions of any refund, cancellation, exchange, or purchase policy or policies, including but not limited to the specific steps and means by which such requests must be submitted, and the telephone number, email address, web address, or street address to which such requests must be directed, including but not limited to the deadline (by date or frequency) by which the consumer must act, and, if there is a policy of not making refunds, cancellations, exchanges, or repurchases, a statement regarding this policy.

## IX.

## PROHIBITIONS CONCERNING REFUNDS AND CANCELLATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from failing to honor a refund, return,

or cancellation request that complies with any policy of Defendants to make refunds or allow returns or cancellations.

## X.

### MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of $14,564,891 is hereby entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B.      Defendants are ordered to pay as follows:

1.      Individual Defendant Fred Richard Guerra, III is ordered to pay to the Commission $243,000;

2.      Individual Defendant Lanty Paul Gray, a/k/a Lanty Paul, is ordered to pay to the Commission $100,000; and

3.      Individual Defendant Rafat Abbas, a/k/a Rafot Abbas, is ordered to pay to the Commission $180,000.

Defendants stipulate that their undersigned counsel holds these payments in escrow for no purpose other than payment to the Commission.  Such payments must be made within 7 days of entry of this Order by electronic fund transfers in accordance with instructions previously provided by a representative of the Commission.  Upon such payments, and the asset transfer specified in Subsection C of this Section, the remainder of the judgment is suspended, subject to the Subsections below.

C.      Within 5 calendar days of entry of this order, Individual Defendant Guerra must sell, on a public exchange at fair market value, all interest in the Bitcoin cryptocurrency listed on the Financial Statement of Individual Defendant Fred Richard Guerra, III, signed on June 26,

2018, provided to the Commission.  Within 5 calendar days of the Bitcoin sale, Individual Defendant Guerra must transfer the net proceeds of the sale to the Commission by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

D.      The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.      The Financial Statement of Individual Defendant Fred Richard Guerra, III, signed on June 26, 2018, including the attachments;

2.      The Financial Statement of Individual Defendant Lanty Paul Gray, a/k/a Lanty Paul, signed on June 25, 2018, including the attachments;

3.      The Financial Statement of Individual Defendant Rafat Abbas, a/k/a Rafot Abbas, signed on June 26, 2018, including the attachments;

4.      The Financial Statement of Corporate Defendant Global Community Innovations LLC signed by Fred Guerra, Owner, on June 26, 2018;

5.      The Financial Statement of Corporate Defendant Innovated Health LLC, also d/b/a Innovative Health, signed by Fred Guerra, Member, on June 25, 2018, including the attachments;

6.      The Financial Statement of Corporate Defendant Emerging Nutrition Inc. signed by Fred Guerra on June 25, 2018, including the attachments;

7.      The Financial Statement of Corporate Defendant Buddha My Bread LLC signed by Fred Guerra, Member, on June 25, 2018, including the attachments;

8.      The Financial Statement of Corporate Defendant Innovated Fulfillment LLC signed by Fred Guerra on June 25, 2018, including the attachments;

9.      The Financial Statement of Corporate Defendant Ship Smart LLC, also d/b/a Jetpack or Jetpack Fulfillment, signed by Fred Guerra, Member, on June 25, 2018, including the attachments;

10.     The Financial Statement of Corporate Defendant Vista Media LLC signed by Fred Guerra, Owner, on June 26, 2018, including the attachments;

11.     The Financial Statement of Corporate Defendant Ash Abbas LLC signed by Fred Guerra on June 25, 2018, including the attachments;

12.     The Financial Statement of Corporate Defendant DCT Marketing, Inc. signed by Lanty Gray, President, on June 25, 2018, including the attachments;

13.     The Financial Statement of Corporate Defendant RNA Enterprise, Inc. signed by Rafat Abbas, Owner, on June 26, 2018, including the attachments;

14.     The additional documentation submitted by Defendants' counsel Jennifer Dowdell Armstrong to the Commission via secure file transfer protocol (SFTP), including:

a.      Investment Statements for Individual Defendant Rafat Abbas' J.P.Morgan account ending in -7118, submitted on July 26, 2018;

b.      Bank Statements for Corporate Defendant RNA Enterprise, Inc.'s Chase account ending in -0527, submitted on July 26, 2018;

c.      Bank Statements for Corporate Defendant RNA Enterprise, Inc.'s Chase account ending in -7231, submitted on July 26, 2018;

d.      Statements for Individual Defendant Rafat Abbas' Robinhood account ending in -2613, submitted on July 31, 2018, and August 7, 2018;

21

e.   Bank Statements for Individual Defendant Rafat Abbas' Chase Private Client Savings account ending in -2879, submitted on August 3, 2018;

f.   Bank Statements for Corporate Defendant RNA Enterprise, Inc.'s Chase account ending in -8194, submitted on August 13, 2018;

g.   Bank Statements for Corporate Defendant Ash Abbas LLC's Chase account ending in -3220, submitted on July 31, 2018;

h.   Bank Statements for Corporate Defendant Ash Abbas LLC's Ink from Chase account ending in -3570, submitted on July 31, 2018;

i.   Bank Statements for Corporate Defendant Buddha My Bread LLC's Chase account ending in -2275, submitted on August 16, 2018;

j.   Bank Statements for Corporate Defendant Buddha My Bread LLC's Chase account ending in -0733, submitted on August 16, 2018;

k.   Bank Statements for Corporate Defendant Emerging Nutrition Inc.'s Chase account ending in -2598, submitted on August 16, 2018;

l.   Bank Statements for Corporate Defendant Emerging Nutrition Inc.'s Chase account ending in -8588, submitted on August 16, 2018;

m.   Corporate Defendant Innovated Health LLC, also d/b/a Innovative Health's 2014 Tax Returns, submitted on July 17, 2018;

n.   Bank Statements for Corporate Defendant Ship Smart LLC's Chase account ending in -8117, submitted on July 31, 2018;

o.   Bank Statements for Corporate Defendant Ship Smart LLC's Chase account ending in -8252, submitted on July 31, 2018;

22

p.      Bank Statements for Summit Herbals LLC's Chase account ending in -0618, submitted on July 26, 2018;

q.      Bank Statements for Top Shelf Nutrition LLC's Chase account ending in -7967, submitted on July 31, 2018;

r.      Bank Statements for Corporate Defendant DCT Marketing, Inc.'s Chase account ending in -9626, submitted on July 26, 2018;

s.      Statements for Individual Defendant Lanty Paul Gray's Robinhood account ending in -0719, submitted on August 3, 2018, and additional related transactional information submitted on August 7, 2018, August 21, 2018, and August 27, 2018;

t.      Bank Statements for AGG Staffing LLC's Chase account ending in -9639, submitted on August 13, 2018;

u.      Bank Statements for Your Healthy Supplement LLC's KeyBank account ending in -7565, submitted on August 16, 2018;

v.      The purchase agreement for Individual Defendant Lanty Paul Gray's 2015 Dodge Durango R/T, VIN 1C4SDJCTXFC180619, dated November 9, 2015, submitted on August 27, 2018;

w.      Supplemental bank statement data for Individual Defendant Fred Guerra's Chase account ending in -0571, submitted on July 17, 2018;

x.      Bank Statements for the Guerra Company LLC's Chase account ending in -0537, submitted on July 26, 2018;

y.      Bank Statements for Corporate Defendant Vista Media LLC's Chase account ending in -8322, submitted on July 26, 2018;

z.      Statements for Individual Defendant Fred Guerra's Robinhood account ending in -8318, submitted on July 31, 2018;

aa.     Bank Statements for Michelle Baldini's Citizens Bank account ending in -8100, submitted on August 16, 2018;

bb.     An August 3, 2018 Loan Statement for Corporate Defendant Vista Media LLC's US Bank account ending in -4400, submitted on August 17, 2018; and

cc.     Statements for Michelle Baldini's Chase Sapphire Reserve credit card account ending in -4969, submitted on August 23, 2018; and

dd.     Coinbase account report and other transactional data for Individual Defendant Fred Guerra's Bitcoin cryptocurrency, submitted on September 19, 2018, and September 21, 2018;

15.     The additional information submitted by Defendants' counsel Jennifer Dowdell Armstrong to the Commission via letter dated July 17, 2018, and via electronic mail dated July 18, 2018; July 31, 2018; August 2, 2018; August 13, 2018; August 14, 2018; August 15, 2018; August 16, 2018; August 17, 2018; August 21, 2018; August 22, 2018; and

16.     The additional information submitted by Defendants' counsel Ashraf Abbas to the Commission via electronic mail dated August 24, 2018;

E.      The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

F.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above (which the parties

stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

G.     Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

H.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including but not limited to in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

I.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

J.     Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

K.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including but not limited to consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including but not limited to consumer information remedies) as it determines to be reasonably related to Defendants'

practices alleged in the Complaint.  Any money not used for such equitable relief is to be
deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any
actions the Commission or its representatives may take pursuant to this Subsection.

## XI.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees,
and attorneys, and all other Persons in active concert or participation with any of them, who
receive actual notice of this Order, are permanently restrained and enjoined from directly or
indirectly:

A.      Failing to provide sufficient customer information to enable the Commission to
efficiently administer consumer redress.  If a representative of the Commission requests in
writing any information related to redress, Defendants must provide it, in the form prescribed by
the Commission, within 14 days.

B.      Disclosing, using, or benefitting from customer information, including but not
limited to the name, address, telephone number, email address, Social Security number, other
identifying information, or any data that enables access to a customer's account (including but
not limited to a credit card, bank account, or other financial account), that any Defendant
obtained prior to entry of this Order in connection with the labeling, advertising, marketing,
distribution, or sale of any formulation of Xcel, EVO, Geniux, or Ion-Z; and

C.      Failing to destroy such customer information in all forms in their possession,
custody, or control within 30 days after receipt of written direction to do so from a representative
of the Commission.

*Provided, however,* that customer information need not be destroyed, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XII.

## COOPERATION

**IT IS FURTHER ORDERED** that Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Defendants must provide truthful and complete information, evidence, and testimony.  Individual Defendants must appear and Corporate Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## XIII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 10 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of

this Order to:

       1.     All principals, officers, directors, and LLC managers and members;

       2.     All employees having managerial responsibilities for the manufacturing, labeling, advertising, marketing, distribution, or sale of any Covered Product and all agents and representatives who participate in the manufacturing, labeling, advertising, marketing, distribution, or sale of any Covered Product; and

       3.     Any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.

Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

     C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

     A.     Sixty (60) days after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

       1.     Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet

addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all physical, postal, email, and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in:  (a) any designated point of contact; (b) the structure of the Corporate Defendant or any entity that Defendants have any ownership interest in or control directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious names, or residence addresses; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as

29

an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEBrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C.  20580.  The subject line must begin:  *FTC v. Global Community Innovations LLC, et al.,* and the number 1623135.

## XV.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.  Specifically, each Corporate Defendant and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

30

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's:  name; address; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including but not limited to all submissions to the Commission; and

E.      A copy of each unique advertisement or other marketing material.

## XVI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission to interview any employee or other Person affiliated with any Defendant who has agreed to such an

interview.  The Person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including but not limited to posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XVII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED** this 30 day of April, 2019.

/s/ Kathleen B. Burke
_____
United States Magistrate Judge

IT IS SO STIPULATED this **10** day of *April* , 2019.

ALDEN F. ABBOTT
General Counsel

Kristin M. Williams
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
Telephone:  202-326-2619
Facsimile:  202-326-3259
Email:  kwilliams2@ftc.gov
Attorney for Plaintiff
Federal Trade Commission


IT IS SO STIPULATED this _18_ day of _October_ , 2018.

Defendant Fred Richard Guerra, III, Individually,
and on behalf of Global Community
Innovations LLC; Innovated Health LLC, also d/b/a
Innovative Health; Emerging Nutrition Inc.; Buddha
My Bread LLC; Innovated Fulfillment LLC; Ship
Smart, also d/b/a Jetpack and Jetpack Fulfillment;
Vista Media LLC; and Ash Abbas LLC.


IT IS SO STIPULATED this _18_ day of _October_ , 2018.

Lanty Paul Gray, Jr., a/k/a Lanty Paul, Individually,
and on behalf of DCT Marketing, Inc.

33

**IT IS SO STIPULATED** this 15ʸ day of October , 2018.

Rafat Abbas, a/k/a Rafot Abbas, Individually,
and on behalf of RNA Enterprise, Inc.

**IT IS SO STIPULATED** this 18th day of October , 2018.

Jennifer Dowdell Armstrong, Esq.
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5809
Facsimile: (212) 348-5474
Email: jarmstrong@mcdonaldhopkins.com
Attorney for Defendants Global Community
Innovations LLC; Innovated Health LLC, also d/b/a
Innovative Health; Emerging Nutrition Inc.; Buddha
My Bread LLC; Innovated Fulfillment LLC; Ship
Smart LLC, also d/b/a Jetpack and Jetpack
Fulfillment; Vista Media LLC; Ash Abbas LLC;
Fred Richard Guerra, III; Lanty Paul Gray, a/k/a
Lanty Paul; and Rafat Abbas, a/k/a Rafot Abbas

34